## CIRCUIT COURT OF KING GEORGE COUNTY

Commonwealth of Virginia

    v.

James E. Jordan

November 14, 1977

## By JUDGE JOHN A. JAMISON

I have considered the trial brief of Mr. Daltan, defense counsel in the above case, and Mr. Thompson's response thereto regarding the question of suppressing the evidence in this matter.

[As to] the first grounds for suppression Mr. Daltan gives in support of his contention that evidence of a statement allegedly made by the defendant that he was going to hurt the deceased, there is little question that the authorities in Virginia and elsewhere hold that evidence of an actual design to do murder or cause bodily injury is admissible as evidence where such earlier threat is actually consummated. The question is should an earlier threat, approximately one month prior to the murder here, be admitted at the trial where such threat was not one of murder, but of bodily harm where the act of bodily harm was actually consummated immediately following that threat and well before the alleged murder itself. A secondary question is, did the alleged design to do great bodily harm, or to kill the victim through such evil design, culminate in actual harm to her [when it was] apparently

followed by something akin to a reconciliation between the parties prior to the homicide itself. Mr. Daltan has cited copious text from *Wigmore* in which it is stated that:

> In evidencing the existence of [a] general design, use is made of conduct or expressions, as evidence of the state of mind, and it is often a question of whether the weakness of the inference lies in this evidence of the actual state of mind, or in the present inference from the mental condition to the doing of an act. . . . A threat to do a criminal or tortious act is in general admissible; the threat is receivable under the Hearsay exception or as an admission, and the design, thus evidenced, becomes relevant under the present principle . . . . But the practical difference is that almost any antagonistic expression may serve to denote ill-feeling, and rules can hardly be laid down for such evidence; while, on the other hand, regarding the expressions as indicating a design, the nature of the design may seriously affect its relevancy. That which would suffice as evidence of ill-feeling may show no design, or a design too indefinite to be relevant.

The victim's son stated in the transcript (p. 49) that he had heard the defendant say he was going to hurt his mother. This was allegedly one month before the homicide. He stated that on one occasion he saw him looking into the window of their home and that he had a knife in his hand. He explained, however, that he used the knife to try to cut the screen but left the home of the parties or was frightened away. Later in his testimony (p. 51) he said he knew he had a white handled gun but nowhere does he say that he threatened to use the gun against the victim and in fact had only seen him use the gun "shooting skeets" and at his own home. The specific language of the "hurt" appears not to have been given in the transcript, at least not so as to have indicated a specific design of harm to the victim.

If the evidence discloses anything, it was that shortly after the threat of "hurting" her, she had her hand up to her face which may or may not have indicated that she had been slapped. Therefore, I do not believe it has been shown by the evidence that the design to kill the victim had begun to develop at the time of this threat. Indeed, there appears to have been at least some partial reconciliation after the threat and subsequent slap, so it can at least be said that if there had been a design, such design was interrupted either by consummation of the threat or by the passage of time, which was about a month.

Accordingly, evidence of the threat in this case should be suppressed.

The second point which the defendant has made in his trial brief was a motion to suppress evidence of a breaking and entering by the defendant of the home of the alleged victim approximately one week before her death.

Generally, evidence of the commission of a prior criminal act by the defendant may not be admitted. This rule is well established. The only exceptions usually recognized are those in which the prior criminal conduct proves intent, modus operandi, criminal plan or actual design. The prior criminal act must be very closely connected to the crime for which the defendant is tried and must be shown to be a part of an overall plan which the defendant is following. The evidence of breaking and entering in this case here does not seem to show a motive, a plan or design. It is a different type of crime, presumably one against property since there is not any evidence of any attempt in the breaking and entering to physically harm the alleged victim nor does it show a pattern or design, which resulted in the death of the victim here.

In the fairly recent Fredericksburg case of *Commonwealth* v. *Holmes*, this question arose in a murder case. I admitted evidence of another crime by the defendant which occurred on the same night the victim was killed, for the purpose of showing the same pattern of behavior or criminal modus operandi on the part of the defendant, he having used a tire iron to strike another victim and a medical examiner testified that the dead victim had been struck by what appeared to be a tire iron. Because robbery was the motive in both cases and the approach

to the motel operators in the two separate cases was almost exactly the same, I admitted evidence of the second crime which occurred two hours later in Maryland. The Supreme Court denied the writ, petition for which was based largely on this assignment of error. But the two alleged criminal acts of the defendant here are entirely different in nature, and far removed in point of time.

Accordingly, I feel compelled to sustain the motion to suppress evidence of the breaking and entering.

I realize fully that both the threat and the breaking and entering are acts at least of animosity, if not of greater gravity, but the Supreme Court is very protective of the rights of defendants in serious criminal cases. I, therefore, believe it is the better part of wisdom for the trial court here to sustain the motion to suppress these two segments of the evidence rather than risk reversible error by admitting them.

With respect to question numbered three of defendant's brief as to whether or not evidence obtained from the search of the defendant's trailer should be suppressed, I must respond in the negative.

A careful reading of the transcript shows clearly that the defendant gave his consent, not once but two or three times, and that the consent was voluntary and fully informed. Indeed he was almost insistent that the officers examine his trailer. They explained patiently twice that they could not gain entrance without his permission and no threats or promises of any sort were tendered to him. He was cautioned frequently not to permit the search unless he had no objections, and, after being finally warned of the consequences and after consideration of several other matters, he still consented. No search warrant was needed here in view of these circumstances, and the fruits of any such search will not be suppressed.